# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| STEPHANIE VANDERBOON, Individually and for Others Similarly Situated, | **Case No.** _____ |
| v. | Jury Trial Demanded |
| EQUINE MEDICINE AND SURGERY, LLC | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Stephanie VanderBoon ("VanderBoon") brings this class and collective action to recover unpaid wages and damages from Equine Medicine and Surgery, LLC ("EM&S").

2.      VanderBoon works for EM&S as a Vet Tech at EM&S facilities in Kentucky and Louisiana.

3.      Like the Putative Class Members (as defined below), VanderBoon regularly works more than 40 hours in a workweek.

4.      But EM&S does not pay them for all the hours they work.

5.      Instead, EM&S automatically deducts one hour a day from these employees' work time for so-called meal breaks.

6.      VanderBoon and the Putative Class Members are thus not paid for that time.

7.      But EM&S fails to provide VanderBoon and the Putative Class Members with *bona fide* meal breaks.

8.      Instead, EM&S requires VanderBoon and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9.      EM&S's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") and the Kentucky Wage and Hour Act ("KWHA") by depriving VanderBoon and the Putative Class Members of wages, including overtime wages, for all hours worked, including those worked in excess of 40 hours in a workweek.

10.      Further, in addition to excluding time VanderBoon and the Putative Class Members worked during their unpaid "meal breaks," EM&S also paid these employees monthly "per diem" payments for rent when EM&S assigned them to work in locations away from their residences.

11.      But EM&S never included these per diem payments in calculating VanderBoon and the Putative Class Members' regular rates of pay for overtime purposes.

12.      EM&S's per diem pay scheme violates the FLSA and KWHA by failing to pay VanderBoon and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

13.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.      The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.      This Court has general personal jurisdiction over EM&S because EM&S is a domestic limited liability company that maintains its headquarters in Bossier City, Louisiana.

16.      Venue is proper because EM&S maintains its headquarters in Bossier City, Louisiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

17.    VanderBoon worked for EM&S as a Vet Tech at EM&S facilities in Kentucky and Louisiana from approximately July 2021 until December 2022.

18.    Throughout her employment, EM&S classified VanderBoon as non-exempt and paid her on an hourly basis.

19.    But EM&S subjected VanderBoon to its common practice of automatically deducting one hour a day from her recorded work time for so-called "meal breaks."

20.    Further, throughout her employment, EM&S paid VanderBoon monthly per diem payments for rent when EM&S assigned her to work in locations outside her home-state of Kentucky.

21.    But EM&S failed to include these per diem payments in calculating VanderBoon's regular rate of pay for overtime purposes.

22.    VanderBoon's written consent is attached as **Exhibit 1**.

23.    VanderBoon brings this action on behalf of herself and other similarly situated hourly, non-exempt EM&S employees who (1) were subject to EM&S's automatic meal break deduction policy and/or (2) were paid per diems.

24.    EM&S uniformly requires these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

25.    EM&S uniformly pays these employees per diem payments for rent when EM&S assigns them to work in locations outside their home-states, which EM&S fails to include in calculating their regular rates of pay for overtime purposes.

26.    Thus, EM&S uniformly deprives these employees of wages (including overtime compensation at the proper premium rate based on *all* renumeration received) for all hours worked, including those in excess of 40 hours in a workweek in violation of the FLSA and KWHA.

27.     The FLSA Collectives of similarly situated employees are defined as:

**All hourly, non-exempt EM&S employees who received an automatic meal period deduction at any time during the past 3 years ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective"); and**

**All hourly, non-exempt EM&S employees who received per diem payments at any time during the past 3 years ("FLSA Per Diem Collective Members" or "FLSA Per Diem Collective").**

28.     The FLSA Meal Break Collective Members and the FLSA Per Diem Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

29.     VanderBoon also seeks to represent a class under the KWHA pursuant to FED. R. CIV. P. 23.

30.     The Kentucky Class of similarly situated employees are defined as:

**All hourly, non-exempt EM&S employees who received an automatic meal period deduction while working in Kentucky at any time during the past 5 years ("Kentucky Class Members" or "Kentucky Class").**

31.     The FLSA Collective Members and Kentucky Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

32.     EM&S is a Louisiana limited liability company that maintains its headquarters in Bossier City, Louisiana.

33.     EM&S may be served with process by serving its registered agent: **Marilyn Thomas, 7991 East Texas Street, Suite 400, Bossier City, Louisiana 71111,** or wherever she may be found.

## COVERAGE UNDER THE FLSA

34.     At all relevant times, EM&S was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.     At all relevant times, EM&S was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

36. At all relevant times, EM&S has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

37. At all relevant times, EM&S has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

38. In each of the past 3 years, EM&S has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

39. At all relevant times, VanderBoon and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

40. EM&S uniformly deducted one hour/shift from VanderBoon and the FLSA Collective Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

41. As a result, EM&S failed to pay VanderBoon and the FLSA Collective Members for this compensable work, including overtime wages, in violation of the FLSA.

42. EM&S's automatic meal break deduction policy, which deprives VanderBoon and the FLSA Collective Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

43. Further, EM&S uniformly failed to include per diem payments VanderBoon and the FLSA Collective Members received in calculating these employees' regular rates of pay for overtime purposes.

44.     As a result, EM&S failed to pay VanderBoon and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

45.     EM&S's per diem pay scheme, which deprives VanderBoon and the FLSA Collective Members of overtime compensation at the proper premium rate, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

### THE FACTS

46.     EM&S provides equine veterinary services, surgeries, and treatments to racehorses competing across the country, including in Kentucky.

47.     EM&S employs workers, including VanderBoon and the Putative Class Members, to work at its various veterinary facilities.

48.     EM&S uniformly classifies these employees as non-exempt and pays them on an hourly basis.

49.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

50.     For example, VanderBoon worked for EM&S as a Vet Tech at EM&S facilities in Kentucky and Louisiana from approximately July 2021 until December 2022.

51.     As a Vet Tech, VanderBoon's primary responsibilities include assisting veterinarians provide medical services to racehorses, such as preparing medications and injections, preparing equine patients for surgeries, and assisting EM&S's veterinary staff with any treatments and procedures.

52.     Throughout her employment, EM&S classified VanderBoon as non-exempt and paid her on an hourly basis.

53.     Throughout her employment, EM&S subjected VanderBoon to its common practice of automatically deducting one hour from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

54.     VanderBoon and the Putative Class Members performed their jobs under EM&S's supervision, and using materials, equipment, and technology approved and supplied by EM&S.

55.     EM&S requires VanderBoon and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

56.     At the end of each pay period, VanderBoon and the Putative Class Members received wages from EM&S that were determined by common systems and methods that EM&S selected and controlled.

57.     EM&S tracks the hours its hourly, non-exempt employees, including VanderBoon and the Putative Class Members, work.

58.     Further, EM&S subjects its hourly, non-exempt employees, including VanderBoon and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

59.     Specifically, EM&S automatically deducts one hour from VanderBoon and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, meal period.

60.     But EM&S fails to provide VanderBoon and the Putative Class Members with *bona fide* meal periods.

61.     Instead, EM&S requires VanderBoon and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

62.     This unpaid time is compensable under the FLSA and/or KWHA because EM&S knew, or should have known, that (1) VanderBoon and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 60 consecutive minutes.

63.     EM&S failed to exercise its duty to ensure VanderBoon and the Putative Class Members were not performing work that EM&S did not want performed during their unpaid "meal breaks."

64.     The unpaid time is also compensable under the KWHA because EM&S agreed to pay VanderBoon and the Kentucky Class Members an hourly rate of pay for all time they worked, and EM&S failed to pay these employees all their earned wages at the rates agreed to by the parties.

65.     Despite accepting the benefits, EM&S did not pay VanderBoon and the Putative Class Members for the compensable work they performed during their "meal breaks."

66.     Thus, under EM&S's uniform automatic meal break deduction policy, VanderBoon and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA and KWHA.

67.     Likewise, under EM&S's uniform automatic meal break deduction policy, VanderBoon and the Kentucky Class Members are denied "straight time" pay (at their agreed hourly rates) for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the KWHA.

68.     Further, in addition to excluding time VanderBoon and the FLSA Collective Members worked during their unpaid "meal breaks," EM&S also paid these employees per diem payments when EM&S assigned them to work outside of their home-state.

69.     But EM&S failed to include these per diems in calculating VanderBoon and the FLSA Collective Members' regular rates of pay for overtime purposes.

70.     EM&S's per diem pay scheme violates the FLSA by failing to pay VanderBoon and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

71.     EM&S knows VanderBoon and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because EM&S expects and requires these employees to do so.

72.     But EM&S does not pay VanderBoon and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and KWHA.

73.     VanderBoon worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

74.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

75.     Indeed, EM&S typically schedules VanderBoon and the Putative Class Members to work 8- to 9-hour shifts for 5 days a workweek.

76.     And VanderBoon and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

77.     As a result, VanderBoon and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

78.     When VanderBoon and the Putative Class Members worked more than 40 hours in a workweek, EM&S did not pay them 1.5 times their regular rates – based on *all* renumeration received

– for all overtime hours worked because EM&S failed to include (1) time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek and (2) these employees' per diem in calculating their regular rates of pay for overtime purposes.

79.    Likewise, when VanderBoon and the Kentucky Class Members worked fewer than 40 hours in a workweek, EM&S did not pay them "straight time" pay (at their agreed hourly rates) for all hours worked because EM&S failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

80.    EM&S knew, or should have known, it was subject to the FLSA and KWHA, including their respective overtime provisions.

81.    EM&S knew, or should have known, the FLSA and KWHA require it to pay employees, including VanderBoon and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

82.    EM&S knew, or should have known, VanderBoon and the Putative Class Members worked more than 40 hours in a workweek.

83.    EM&S knew, or should have known, VanderBoon and the Putative Class Members regularly worked during their unpaid "meal breaks" because EM&S expected and required them to do so.

84.    EM&S knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived VanderBoon and the Putative Class Members of pay, including overtime compensation at the proper premium rates, for all hours worked in violation of the FLSA and KWHA.

85.    Nonetheless, EM&S failed to pay VanderBoon and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours these employees worked.

86.     Likewise, EM&S failed to pay VanderBoon and the Kentucky Class Members all their wages earned at the rates EM&S agreed to pay them for the work they performed.

87.     EM&S's failure to pay VanderBoon and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

88.     Likewise, EM&S's failure to pay VanderBoon and the Kentucky Class Members all wages earned at the rates EM&S agreed to pay them was neither reasonable, nor was the decision not to pay these employees all wages earned at the rates EM&S agreed to pay them made in good faith.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

89.     VanderBoon brings her claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

90.     The Putative Class Members were uniformly victimized by EM&S's automatic meal break deduction policy and/or EM&S's per diem pay scheme, which are in willful violation of the FLSA and KWHA.

91.     Other Putative Class Members worked with VanderBoon and indicated they were paid in the same manner, performed similar work, and were subject to EM&S's same illegal pay policies.

92.     Based on her experiences with EM&S, VanderBoon is aware EM&S's illegal practices were imposed on the Putative Class Members.

93.     The Putative Class Members are similarly situated in all relevant respects.

94.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

95.     Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

96.     Rather, the Putative Classes are held together by EM&S's uniform automatic meal break deduction policy and/or EM&S's uniform per diem pay scheme that systematically deprived VanderBoon and the Putative Class Members of wages, including overtime pay at the proper premium rate based on all renumeration received, for all hours worked, including those hours worked in excess of 40 hours in a workweek.

97.     The Kentucky Meal Break Class Members are similarly denied "straight time" pay (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

98.     The Putative Class Members are similarly denied overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

99.     The back wages owed to VanderBoon and the Putative Class Members will be calculated using the same records and using the same formula.

100.    VanderBoon's experiences are therefore typical of the experiences of the Putative Class Members.

101.    VanderBoon has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

102.    Like each Putative Class Member, VanderBoon has an interest in obtaining the unpaid wages owed under federal and/or state law.

103.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

104.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and EM&S will reap the unjust benefits of violating the FLSA and KWHA.

105.    Further, even if some of the Putative Class Members could afford individual litigation against EM&S, it would be unduly burdensome to the judicial system.

106.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

107.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

108.    Among the common questions of law and fact are:

a.    Whether EM&S engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and KWHA;

b.    Whether EM&S's automatic meal break deduction policy deprived VanderBoon and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and KWHA;

c.    Whether EM&S failed to pay VanderBoon and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA and KWHA;

d.    Whether EM&S failed to pay VanderBoon and the Kentucky Class Members "straight time" pay at their agreed hourly rates for all hours worked because EM&S failed to include time these employees worked during their meal breaks in their total number of hours worked in a given workweek in violation of the KWHA;

e.    Whether EM&S knew, or had reason to know, VanderBoon and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA and KWHA;

f.    Whether EM&S failed to include VanderBoon and the FLSA Collective Members' per diems in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA;

g.    Whether EM&S's violations of the FLSA and/or KWHA resulted from a continuing course of conduct;

h.    Whether EM&S's decision not to pay VanderBoon and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith;

i.    Whether EM&S's decision not to pay VanderBoon and the Kentucky Class Members all wages earned at the rates EM&S agreed to pay them was made in good faith; and

j.    Whether EM&S's violations of the FLSA and KWHA were willful.

109.    VanderBoon and the Putative Class Members sustained damages arising out of EM&S's illegal and uniform employment policies.

110.    VanderBoon knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

111.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to EM&S's records, and there is no detraction from the common nucleus of liability facts.

112.    Therefore, the issue of damages does not preclude class or collective treatment.

113.    EM&S is liable under the KWHA for failing to pay VanderBoon and the Kentucky Class Members "straight time" pay (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

114.    EM&S is liable under the FLSA and KWHA for failing to pay VanderBoon and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

115.    Consistent with EM&S's illegal automatic meal break deduction policy, VanderBoon and the Kentucky Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

116.    Consistent with EM&S's illegal automatic meal break deduction policy, VanderBoon and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

117.    Consistent with EM&S's illegal per diem pay scheme, VanderBoon and the FLSA Collective Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

118.    As part of its regular business practices, EM&S intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and KWHA with respect to VanderBoon and the Putative Class Members.

119.    EM&S's illegal policies deprived VanderBoon and the Putative Class Members of wages, including overtime compensation at the proper premium rate for all overtime hours worked, which they are owed under federal and/or state law.

120.    There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

121.    This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

122.    Those similarly situated employees are known to EM&S, are readily identifiable, and can be located through EM&S's records.

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**(FLSA COLLECTIVES)**

123.    VanderBoon realleges and incorporates all other paragraphs by reference.

124.    VanderBoon brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

125.    EM&S violated, and is violating, the FLSA by failing to pay VanderBoon and the FLSA Collective Members overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

126.    Throughout the relevant period, EM&S expected and required VanderBoon and the FLSA Collective Members to remain on-duty and be available to work during their unpaid "meal breaks."

127.    Throughout the relevant period, EM&S paid VanderBoon and the FLSA Collective Members per diems that it failed to include in calculating these employees' regular rates of pay for overtime purposes.

128.    VanderBoon and the FLSA Collective Members have been harmed as a direct and proximate result of EM&S's unlawful conduct because they have been deprived of wages owed for work that they performed and from which EM&S derived a direct and substantial benefit.

129.    EM&S knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay VanderBoon and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked.

130.    EM&S's failure to pay VanderBoon and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor

was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

131.     Accordingly, VanderBoon and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES UNDER THE KWHA**
**(KENTUCKY CLASS ONLY)**

132.     VanderBoon realleges and incorporates all other paragraphs by reference.

133.     VanderBoon brings her overtime claim under the KWHA as a Rule 23 class action.

134.     The conduct alleged violates the KWHA, KRS § 337.285, *et seq.*

135.     At all relevant times, EM&S was an "employer" within the meaning of, and subject to the requirements of, the KWHA. *See* KRS § 337.010(1)(d).

136.     At all relevant times, EM&S employed VanderBoon and the Kentucky Class Members as "employees" within the meaning of the KWHA. *See* KRS § 337.010(1)(e).

137.     The Section 337.285 of the KWHA requires employers, like EM&S, to pay employees, including VanderBoon and the Kentucky Class Members, overtime wages at a rate not less than 1.5 times their regular rate of pay for all hours worked in excess of 40 hours in any one workweek. KRS § 337.285(1).

138.     VanderBoon and the Kentucky Class Members are entitled to overtime pay under the KWHA.

139.     EM&S violated, and is violating, the KWHA by failing to pay VanderBoon and the Kentucky Class Members overtime compensation at the proper premium rate for all overtime hours worked. *See* KRS § 337.285(1).

- 17 -

140.     Specifically, EM&S's automatic meal break deduction policy violates the KWHA because it deprives VanderBoon and the Kentucky Class Members of overtime pay at the proper premium rate for all hours worked in excess of 40 hours in a workweek. *See* KRS § 337.285(1).

141.     EM&S knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay VanderBoon and the Kentucky Class Members overtime compensation for all overtime hours worked.

142.     EM&S's failure to pay VanderBoon and the Kentucky Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

143.     Accordingly, VanderBoon and the Kentucky Class Members are entitled to recover their unpaid overtime wages under the KWHA in an amount equal to 1.5 times their regular hourly rates of pay less any amounts actually paid to these employees, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* KRS § 337.385(1).

### THIRD CAUSE OF ACTION
### FAILURE TO PAY ALL WAGES EARNED UNDER THE KWHA
### (KENTUCKY CLASS ONLY)

144.     VanderBoon realleges and incorporates all other paragraphs by reference.

145.     VanderBoon brings her "straight time" claim under the KWHA as a Rule 23 class action.

146.     The conduct alleged violates the KWHA. *See* KRS § 337.020, *et seq*.

147.     At all relevant times, EM&S was an "employer" within the meaning of, and subject to the requirements of, the KWHA. *See* KRS § 337.010(1)(d).

148.     At all relevant times, EM&S employed VanderBoon and the Kentucky Class Members as "employees" within the meaning of the KWHA. *See* KRS § 337.010(1)(e).

149.    The KWHA requires employers, like EM&S, to pay employees, including VanderBoon and the Kentucky Class Members, "the full amount of his [or her] wages due on each regular payday" for all time worked at the rate agreed to by the parties. KRS § 337.020; *see also* KRS § 337.010(1)(c) (defining "wages" to include "any compensation due to any employee by reason of his or her employment, including … any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy.").

150.    During the course of their employment, EM&S agreed to pay VanderBoon and each Kentucky Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek.

151.    VanderBoon and each Kentucky Class Member accepted EM&S's offer.

152.    But during the course of their employment, EM&S failed to pay VanderBoon and the Kentucky Class Members for all time they worked at the rates EM&S agreed to pay them for the work they performed because EM&S automatically deducted one hour/shift from these employees' recorded hours worked.

153.    EM&S violated, and is violating, the KWHA by failing to pay VanderBoon and the Kentucky Class Members all wages earned for all hours worked at the hourly rates EM&S agreed to pay them for the work they performed.

154.    Accordingly, VanderBoon and the Kentucky Class Members are entitled to recover their unpaid "straight time" wages under the KWHA at their agreed hourly rates of pay less any amounts actually paid to these employees, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* KRS § 337.385(1).

## JURY DEMAND

155.    VanderBoon demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, VanderBoon, individually and on behalf of the Putative Class Members, seeks the following relief:

a.      An Order designating the FLSA Collectives as collective actions and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order designating the Kentucky Class as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing VanderBoon and her counsel to represent the interests of the FLSA Collectives and Kentucky Class;

d.      An Order pursuant to Section 16(b) of the FLSA finding EM&S liable for unpaid overtime wages due to VanderBoon and the FLSA Collective Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

e.      An Order finding EM&S liable to VanderBoon and the Kentucky Class Members for unpaid overtime wages owed under the KWHA, as well as for liquidated damages in an amount equal to their unpaid compensation;

f.      An Order finding EM&S liable to VanderBoon and the Kentucky Class Members for unpaid "straight time" wages owed under the KWHA, as well as for liquidated damages in an amount equal to their unpaid compensation;

g.      Judgment awarding VanderBoon and the Putative Class Members all unpaid compensation and other damages available under the FLSA and KWHA;

h.    An Order awarding attorney's fees, costs, and expenses;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Philip Bohrer*
    Philip Bohrer (#14089)
    phil@borhrerbrady.com
    Scott E. Brady (#24976)
    scott@bohrerbrady.com
**BOHRER BRADY, LLC**
8712 Jefferson Hwy., Suite B
Baton Rouge, Louisiana 70809
225-925-5297 – Telephone
225-231-700 – Facsimile

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**